UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA-WESTERN DIVISION

| | |
|---|---|
| CATHY IRENE BOONE, | ) CV 12-4007-SH |
| | ) |
| Plaintiff, | ) MEMORANDUM DECISION |
| | ) |
| v. | ) |
| | ) |
| MICHAEL J. ASTRUE, | ) |
| Commissioner of Social Security Administration, | ) |
| | ) |
| Defendant. | ) |
| | ) |

I. <u>INTRODUCTION</u>

This matter is before the Court for review of the decision by the Commissioner of Social Security denying Plaintiff's application for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) under Title II and Title XVI, respectively, of the Social Security Act (Act). Pursuant to 28 U.S.C. §636(c), the parties have consented that the case may be handled by the

1

undersigned. The action arises under 42 U.S.C. §405(g), which authorizes the Court to enter judgment upon the pleadings and transcript of the record before the Commissioner. The Plaintiff and the Defendant have filed their pleadings, the Defendant has filed the Certified Administrative Record (AR), and each party has filed its supporting brief.

## II. BACKGROUND

On August 18, 2009, Plaintiff filed applications for DIB and SSI, alleging disability beginning March 1, 2009. (AR 122-132) On October 20, 2009, Plaintiff's applications were denied. (AR 75-76). On September 16, 2010, Plaintiff was afforded a hearing before an Administrative Law Judge (ALJ). (AR 41-74). On November 9, 2010, the ALJ issued a decision finding Plaintiff not disabled within the meaning of the Social Security Act. (AR 19-35). Plaintiff filed a request for review of the ALJ's decision on December 27, 2010. (AR 119). On March 12, 2012, the Appeals Council denied Plaintiff's request. Subsequently, on May 11, 2012, Plaintiff filed action for judicial review of the Commissioner's decision pursuant to 42 U.S.C. §405(g) and §1383(c).

Plaintiff makes two challenges to the ALJ's decision denying Plaintiff disability benefits, alleging (1) the ALJ failed to correctly assess whether Plaintiff suffered from severe mental impairment, and (2) the ALJ failed to properly evaluate Plaintiff's testimony. For the reasons discussed below, the Court finds Plaintiff's first claim of error is without merit, and second claim of error to have merit.

## III. DISCUSSION

### A. Issue No. 1

Plaintiff contends that the ALJ failed to assess Plaintiff's severe mental impairment, and that new evidence submitted after the ALJ's decision establishes that Plaintiff has a severe mental impairment. Defendant argues Plaintiff failed to

2

establish a medically determinable mental impairment. Defendant further argues that evidence submitted to the Appeals Council following the ALJ's decision does not alter the ALJ's finding that Plaintiff does not have a severe mental impairment. Plaintiff's contention that the ALJ failed to assess Plaintiff's severe mental impairment is without merit, as the ALJ's determination that Plaintiff did not suffer from a severe mental impairment within the meaning of the Social Security Act was supported by substantial evidence.

### 1. The ALJ's Determination that Plaintiff Did Not Have a Severe Medically Determinable Mental Health Impairment was Properly Supported by Substantial Evidence

To qualify for disability benefits, it must be shown that Plaintiff has a "medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A); 20 C.F.R. §§404.1505(a), 416.905(a). The Social Security Administration has established a five-step sequential evaluation process for determining whether an individual is disabled within the meaning of the Act. See 20 C.F.R. §404.1520. The second step requires that the ALJ determine whether the Plaintiff has a severe impairment. Id. This is a *de minimus* test intended to weed out the most minor of impairments. See, Bowen v. Yuckert, 482 U.S. 137, 107 S. Ct. 2287, 2299-2300 (1987) (O'Connor, J. concurring; see also Webb v. Barnhart, 433 F. 3d 683, 687 (9th Cir. 2005)(step two is a "de minimus threshold"); Smolen v. Chater, 80 F. 3d 1273, 1290(9th Cir. 1996). When evaluating whether a claimant has a medically determinable mental impairment, the ALJ must first evaluate the claimant's symptoms, signs, and laboratory findings. 20 C.F.R. §404-1520(b)(1).

In this case, the administrative record contained minimal evidence of a medically determinable mental impairment. Plaintiff asserts that the September 24, 2009 summary report of a psychiatric evaluation by Dr. Ernest Bagner, a consulting physician, establishes that Plaintiff has a severe mental impairment. In his decision, the ALJ duly noted that Dr. Bagner indicated that Plaintiff suffered a "[d]epressive disorder, not otherwise specified." (AR 27). However, the ALJ also noted Dr. Bagner's opinion was made "after one brief visit on September 24, 2009" and that he suggested the disorder may cause, at most, mild to moderate limitations - including in the areas of attention and concentration, and handling workplace stress. (AR 27, 320). In addition, Dr. Bagner indicated Plaintiff would have no limitations interacting with supervisors, peers, or the public. (AR 320). In his Functional Assessment, Dr. Bagner stated, "If patient receives psychiatric treatment, she should be significantly better in less than six months" (AR 319).

Relying on this information, the ALJ determined Plaintiff's condition was both amenable to treatment and unlikely to persist not less than 12 months. In addition, the ALJ pointed to the lack of any diagnosis from a treating source that corroborated the evidence. (AR 27). Dr. Bagner's observation that Plaintiff would have no limitations interacting with supervisors, peers, or the public, in spite of Plaintiff's depressive disorder-NOS, suggests that the impairment was not severe or more than minimally impactful upon her functional ability. The ALJ surmised that the minimal medical evidence available failed to support a medically determinable impairment, let alone a severe one.

Plaintiff also asserts that prior to the ALJ's decision she was treated with psychotropic medications by Olive View-UCLA Medical Center (AR 401, 421, 422). The ALJ made note of the prescribed medications, however, the ALJ also noted that the medication was prescribed to address pain management in relation to her lower back pain. The ALJ discussed that, in prescribing Effexor, one physician wrote it "may assist with her chronic pain issues" and did not indicate it was

particularly prescribed to address Plaintiff's complaints of depression or anxiety. (AR 399). The same records from Olive View indicates at least one physician suggested to Plaintiff that she "attend community mental health if possible" (AR 421), however, there were no symptoms recorded in the documents. This conservative recommendation coupled with a lack of documented symptoms suggests that her symptoms were not severe.

In his decision, the ALJ also looked to statements made by the Plaintiff in making a determination that Plaintiff did not suffer from mental illness. In her testimony at the Administrative Hearing, the Plaintiff stated she had problems with memory, concentration and stress. (AR 43-74). The ALJ asked Plaintiff if she had ever been treated by a psychiatrist or a psychologist, to which Plaintiff replied that she had seen a counselor in 2005, 2004 or 1995, but had not been treated by a psychologist or psychiatrist (AR 66). In both Disability Report - Appeal forms, dated August 22, 2009 and November 14, 2009, Plaintiff indicated she had not seen and did not have plans to see a doctor/hospital/clinic or anyone else for emotional or mental problems that limit her ability to work (AR 148, 198). Referring again to the psychiatric evaluation conducted by Dr. Bagner, Plaintiff described her relationship with family and friends to be "good." (AR 319). She indicated no suicidal or homicidal ideations and gets along well with family and friends. (AR 319).

The ALJ looked to the Plaintiff's medical record and found no records indicating a diagnosis of mental impairment or complaints of symptoms of mental impairments by treating physicians. As a consulting physician, Dr. Bagner's report indicates zero to mild limitations as a result of Plaintiff's depressive disorder-NOS. Plaintiff's own testimony revealed no indication that she had symptoms of mental impairment. Given the record available to the ALJ at the time the decision was made, the ALJ's determination that Plaintiff did not suffer from a mental impairment, let alone a severe mental impairment, was based on substantial

evidence. Since the ALJ determined there was no medically determinable mental impairment, the ALJ's inquiry ended at step two of the sequential analysis.

### 2. The Evidence Submitted to the Appeals Council Would Not Have Changed the Administrative Result.

Plaintiff has failed to show that the new evidence submitted to the Appeals Council should have changed the ALJ's decision. Following the Administrative Hearing and subsequent decision by the ALJ, Plaintiff submitted new evidence including treatment records from Hollywood Mental Health (Hollywood). From those records, Plaintiff once again asserts that she was prescribed Effexor and had been taking it since 2010. (AR 441). However, as determined by the ALJ and discussed above, Effexor was documented as having been prescribed to treat chronic pain issues. (AR 399).

Plaintiff also asserts that the Adult Initial Assessment conducted at Hollywood on March 17, 2011, five months following the ALJ's decision, indicates Plaintiff was noted to have Major Depressive Disorder, Recurrent, Severe, with a GAF rating of 45. (AR 442). This information is not probative, as it was after the ALJ decision, and is indicative of the examiner's observations at the time of an initial intake. See Sanchez v. Secretary of Health and Human Serv., 8122 F. 2d 509, 511-12 (9th Cir. 1987) (rejecting consideration of new evidence of two psychological evaluations performed after the ALJ decision was made, because the evidence indicated, "at most, mental deterioration after the hearing, which would be material to a new application, but not probative to his condition at the hearing.").

Similarly, the mental status evaluation performed at Hollywood by Dr. Park is not probative. In that evaluation, Dr. Park checked boxes indicating plaintiff presented with slowed soft speech, impaired immediate, remote and recent memory, tearful and helpless mood, sad mood, impaired concentration with thought blocking, withdrawal and isolated (AR 446); however, the evaluation is once again indicative

of the Plaintiff's condition at the time of the evaluation on March 17, 2011, after the ALJ's decision. Furthermore, the evaluation lends little support for the proposition that those symptoms had occurred at any time before. The check-off report, without further information or a history of similar symptoms, provides little support for Plaintiff's assertions. See Crane v. Shalala, 76 F.3d 251, 253, (9th Cir. 1996) (ALJ properly rejected doctor's opinion because they were check-off reports that did not contain any explanation of the bases of their conclusions).

Plaintiff next brings attention to the mental impairment questionnaire completed on May 6, 2011, where Dr. Park noted "case opened on 3/17/11, long years of untreated depressive symptoms, worsening and debilitating for the past year" (AR 459). This information adds little to contribute to the contention that Plaintiff suffered from a severe mental impairment at the time of the ALJ decision. The statement by Dr. Park lacks support in the medical record, and does not indicate the bases of those statements. Symptoms such as insomnia, frequent crying spells, feeling depressed, panic, easily irritated, angry, increased appetite, low motivation, and low energy recorded by Dr. Park are the few symptoms recorded in any document in the Administrative Record. (AR 460). Although they are relevant to the claim that Plaintiff suffers from a mental impairment, there still remains no indication that Plaintiff exhibited these symptoms prior to the ALJ decision. As the Defendant states, the new evidence could be material to a new DIB or SSI application, but is not probative of the Plaintiff's condition at the time of hearing.

**B. Issue No. 2: The ALJ Failed to Properly Evaluate Plaintiff's Credibility.**

Plaintiff contends that the ALJ failed to consider Plaintiff's excess pain and improperly determined Plaintiff's testimony lacked credibility, thereby failing to properly determine her Residual Functional Capacity (RFC). Defendant contends that the ALJ properly evaluated Plaintiff's credibility by providing specific credibility findings that were substantially supported by the evidence.

When a plaintiff produces objective medical evidence of impairment, "an [ALJ] may not reject a claimant's subjective complaints based solely on lack of objective medical evidence to fully corroborate the alleged severity of pain." Moisa v. Barnhart, 367 F.3d 882, 885 (9th Cir. 2004); citing Rollins v Massanari, 261 F.3d 853 (9th Cir. 2001). Absent a finding of malingering, the ALJ must either accept plaintiff's testimony as credible, or offer specific, "clear and convincing" reasons for rejecting subjective complaints regarding the severity of plaintiff's symptoms. Valentine v. Comm'r, 574 F3d, 685, 693 (9th Cir. 2009). To determine whether plaintiff's testimony is reliable, the ALJ may consider the nature of plaintiff's daily activities, Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996). The claimant's daily activities, if rigorous enough to be a fair proxy for the demands of work, can constitute a basis to find allegations of disability pain (or other subjective symptoms) not credible. See Fair v. Bowen, 885 F. 2d 597, 603 (9th Cir. 1989); but see Vertigan v. Halter, 260 F.3d 1044, 1049-50 (9th Cir. 2001) (holding that "the mere fact that a plaintiff has carried on certain daily activities such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from her credibility as to her overall disability").

Here, there was no assertion or evidence of malingering. The ALJ failed to provide "clear and convincing" reasons for rejecting Plaintiff's subjective complaints regarding the severity of her symptoms. Although the ALJ found sufficient evidence based on objective data and clinical findings to substantiate that plaintiff's medically determinable impairments, in combination, were severe (AR 26), the ALJ found that Plaintiff had the RFC to perform the full range of light work as defined in 20 U.S.C. 404.1567(b) and 416.967(b). (AR 29). In doing so, the ALJ improperly questioned Plaintiff's credibility with regard to her subjective complaints while ignoring objective evidence of severity of pain.

First, the ALJ failed to provide clear and convincing reasons for rejecting objective medical evidence of Plaintiff's pain. The ALJ acknowledges that treating

sources provide objective findings of "decreased range of motion, tenderness to palpation, and on occasion, positive straight leg raising test results, which are generally consistent with [Plaintiff's] complaints of residual pain, " yet concludes that there is no medical source that has provided "reliable objective findings to support that [Plaintiff] is as limited as she claims." (AR 30). The ALJ also acknowledges that one source suggests that Plaintiff was incapacitated due to CTS and peripheral neuropathy from August 2006 to October 2007, and temporarily disabled for two to three months at a time. (AR 30). The ALJ reasoned that the form opinions lacked objective findings to support the statements.

Other than stating the findings were conclusory, the ALJ failed to provide specific reasons for rejecting that evidence and omitted explanation for attributing such little weight to the treating sources. In contrast, medical records show consistent reports from treating physicians at Olive View documenting Plaintiff's radiculopathy, chronic lower back pain ranging from intensity of 4/10 to 8/10, pain in hands, and pain increasing with exertion. (AR 398). In addition, in an independent evaluation, consulting physician Dr. LaClair noted Plaintiff had "permanent activity restrictions including 15 pound maximum lift, no repetitive bending, stooping or twisting of the trunk, sustained option and no crawling, kneeling or squatting." (AR 281). Dr. LaClair's report indicated Plaintiff had mild central L5-S1 disc protrusion, right sacroiliac joint dysfunction, left peteliofemoral syndrome, and vague upper extremity complaints of undetermined etiology. (AR 280). Without any explanation for disregarding Dr. LaClair's medical opinion, the ALJ provides no support for disregarding these objective findings.

Second, the ALJ improperly considered the conservative nature of treatment in evaluating Plaintiff's subjective complaints because the ALJ failed to address or investigate the bases for the conservative treatment. The ALJ states that Plaintiff was not referred for surgery on her back, upper extremities, or elsewhere, but treated with physical therapy instead. (AR 32). One physician opines that due

to a lack of significant MRI findings, that Plaintiff would not be a likely surgical candidate, but recommended physical therapy. (AR 402). The ALJ also references Plaintiff's report that she engages in moderate activity 2-3 times a week. (AR 31). The fact that back surgery was not recommended was not indicative of the Plaintiff's degree of pain. With regard to treatment with physical therapy, the ALJ failed to acknowledge records indicating physical therapy provided Plaintiff no relief. (AR 400). The ALJ addresses the fact that lack of access of care is not a factor to be used against the Plaintiff, but then claims that the record reflects she has access to care, including a visit for a runny nose. That comparison is not persuasive, as the access to care for treatment for common cold symptoms is presumably easier than access to care for physicians with highly specialized training for lower back treatment and documented conditions.

      Third, the ALJ improperly questioned Plaintiff's credibility when he referenced reports of her daily activities. The ALJ noted that Plaintiff testified she was able to tend to her personal care needs, assist with some household chores, drive, and occasionally go shopping. However, it is improper to rely on such evidence to impeach the plaintiff's credibility when those activities do not consume a substantial part of Plaintiff's day. Vertigan, 260 F. 3d at 1049-50. There was no evidence or testimony evoked regarding how long Plaintiff could engage in these activities. As reasoned in Vertigan, activities that Plaintiff testified as being able to do, does not support the contention that she could engage in work or similar activity for a longer period when considering the pain involved. Id at 1050. In stating that Plaintiff's activities suggests that she has "greater physical capacities" than she has testified and that she has not been frank, the ALJ discredited Plaintiff's credibility without providing the bases for such conclusions. Plaintiff testified that she feels numbness and stiffness in her hands, wrists, back, and legs, increasing pain in her hips and back, and that she can walk ten to fifteen minutes at a time. (AR 42-74). This testimony does not wholly contradict her ability to do menial household

chores, drive for short periods, or shop with the aid of a scooter while taking breaks (AR 63-72), nor does it suggest, by the fact that she can engage in those activities yet still experience those symptoms, that she is not credible.  The ALJ failed to discuss whether those activities were a fair proxy for the demands of work with an RFC to perform a full range of light work. See Fair v. Bowen, 885 F. 2d at 603. In sum, the ALJ has failed to provide clear and convincing evidence for rejecting Plaintiff's subjective statements.

## IV. CONCLUSION

For the forgoing reasons, the decision of the Commissioner is reversed and remanded for further proceedings, pursuant to Sentence 4 of 42 U.S.C. §405(g).

DATED: January 23, 2013

_____
STEPHEN J. HILLMAN
UNITED STATES MAGISTRATE JUDGE